UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS C.,[1] | ) |
| | ) |
|     Plaintiff, | ) |
| | )   No. 20 C 6678 |
| v. | ) |
| | )   Magistrate Judge Gabriel A. Fuentes |
| **KILOLO KIJAKAZI, Acting** | ) |
| **Commissioner of Social Security,**[2] | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[3]

Before the Court is Plaintiff Thomas C.'s motion seeking remand of the Administrative Law Judge's ("ALJ") opinion denying his application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") (D.E. 20), and the Commissioner's cross motion to affirm that decision. (D.E. 26).

### I.    PROCEDURAL HISTORY

Plaintiff filed his claims for DIB and SSI on November 13, 2015, alleging that he has been disabled due to having a bullet near his spine since July 1, 2014. (R. 180.) After a hearing, on May 24, 2018, ALJ Deborah Giesen found Plaintiff not disabled. (R. 1214.) In her opinion the ALJ held, in relevant part, that Plaintiff had moderate limitations in his ability to get along with others

---

[1] The Court in this opinion is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] The Court substitutes Kilolo Kijakazi for her predecessor, Andrew Saul, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On November 17, 2020, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 9.)

and in his ability to concentrate, persist and maintain pace; the ALJ assigned a residual functional capacity ("RFC") that, among other things, limited Plaintiff to "simple routine tasks, occasional interaction with co-workers and supervisors and no contact with the public." (R.26, 27, 35.) After Plaintiff filed a lawsuit in federal court, the Commissioner agreed to a voluntary remand. The Appeals Council's order remanding the case stated:

> *Further consideration of the claimant's mental residual functional capacity is necessary. The decision determined that the claimant's mental impairments resulted in a moderate limitation in concentrating, persisting or maintaining pace (Decision, page 4). In the residual functional capacity assessment, the Administrative Law Judge limited the claimant, in part, to "simple, routine tasks" (Decision, page 5). The decision, however did not explain how "simple, routine tasks" reflected the moderate limitation noted above (Decision, pages 5-11). Therefore, remand is necessary to reconsider the claimant's mental residual functional capacity.* (R. 1352.)

After a second hearing before the same ALJ, on July 16, 2020, she again found Plaintiff not disabled and Plaintiff's appeal of that decision is before us now. (R. 1214.)

## II. ALJ's DECISION

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. (R. 15-42.) The ALJ found at Step One that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (R. 1199.) At Step Two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, status post-surgery two times, obesity, osteoarthritis of the right ankle and osteoarthritis of the knee. (*Id.*) The ALJ found that Plaintiff's substance abuse disorder, anxiety, post-traumatic stress disorder (PTSD) and history of substance abuse were non-severe. (*Id.*)

The ALJ concluded at Step Three that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). (R. 1201.) With respect to the "Paragraph B" criteria for determining the severity of

mental impairments, the ALJ found that Plaintiff had no limitation in his ability to remember, understand or apply information or in his ability to manage himself, and no more than mild limitations in his ability to interact with others and concentrate, persist and maintain pace. (R. 1200-01.)

Before Step Four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 404.1567(b) except that he could never climb ladders, ropes, or scaffolds, never kneel, crouch or crawl, and never work around unprotected heights, open flames, or dangerous moving machinery, and could occasionally climb ramps and stairs and stoop. (R. 1202.)[4] Then, at Step Four, the ALJ concluded that based upon the VE's testimony and Plaintiff's age, education, work experience and RFC, Plaintiff was able to perform his previous job as a safety inspector, which was performed at the light level, and that he could also perform the job even if he was limited to sedentary work, and therefore he was not disabled under the Social Security Act. (R. 2013.)

## III. ANALYSIS

### A. Legal Standard

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, – U.S. –, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. The Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination. Rather, this court asks whether the ALJ's decision reflects an adequate logical

---

[4] Social Security regulations define "light work" as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . the full range of light work requires standing or walking, on and off, or a total of approximately six hours in an eight-hour workday." SSR 83-10 (ssa.gov), last visited on May 22, 2023.

3

bridge from the evidence to the conclusions." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (citations and quotations omitted). The claimant has the burden of proof at steps one through four of the five-step sequential process for determining disability. *See Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). At Step Five, the burden of proof shifts to the Commissioner of Social Security to show that the claimant can adjust to other work existing in "a significant number of jobs…in the national economy." *See Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020).

Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005)). To put it another way, "A reviewing court is charged with reading an ALJ's opinion as a whole and taking a common-sense approach to its review." *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019) cited in *Brandi B. v. Kijakazi*, No. 21 C 4383, 2022 WL 2463558, at *6 (N.D. Ill. July 6, 2022).

Plaintiff makes five arguments in favor of remand: (1) the ALJ failed to comply with the Appeals Council's order; (2) the ALJ's assessment of mental opinion evidence is not supported by substantial evidence; (3) the ALJ's physical RFC assessment is not supported by substantial evidence; (4) the ALJ's assessment of the opinion of Plaintiff's treating doctor was faulty; and (5) the ALJ's subjective symptom analysis was not supported by substantial evidence. After reviewing the evidence and the parties' arguments, we conclude that the ALJ did not err in her treatment of

4

the Appeals Council's remand order. However, her analysis of Plaintiff's physical impairments that arose after the first decision was faulty, and on that basis, we remand the decision.

### B. No Error in ALJ's Treatment of Appeals Council Directive

When a prior decision is remanded pursuant to Sentence Four of 42 U.S.C. § 405(g) and the Appeals Council issues an order directing what evidence and issues an ALJ must consider on remand, the prior decision is vacated. This means that that the ALJ is not bound by any findings in the first decision. *Jennifer C. v. Saul*, No. 18 C 1243, 2019 WL 4345344, at *5 (N.D. Ill. Sept. 12, 2019). Moreover, an ALJ's failure to follow the directive of the Appeals Council on remand is not an independent basis to overturn the new decision, as long as that decision is supported by substantial evidence. *Poyck v. Astrue*, 414 Fed. App'x 859, 861 (7th Cir. 2011) ("The question of whether the ALJ complied with the Appeals Council's remand order is not . . . of independent importance. The only question properly before us is whether the ALJ's decision . . . is supported by substantial evidence.")

Therefore, while we recognize the incongruity of the same ALJ adopting the Agency doctors' Paragraph B findings in her opinion from 2018 but then rejecting them in her 2020 opinion and thus finding he had no severe mental impairment, we are confined to considering whether that second opinion is supported by substantial evidence without regard to what the ALJ concluded in her first, now vacated, decision. *See, Brumbaugh v. Saul,* 805 Fed. App'x 973, 977 (7th Cir. 2021) (ALJ not required to explain what changed between first and second decision; issue is whether second decision is supported by substantial evidence). Moreover, as we explain below, the ALJ did in fact follow the directive of the Appeals Council to further consider Plaintiff's mental RFC. The ALJ discussed the evidence that had been before her during the first hearing in addition to analyzing the evidence (or lack thereof) related to Plaintiff's mental health from the time between

the first and second hearing before concluding that Plaintiff's mental health impairments were not severe. This is what the Appeals Council directed the ALJ to do; there is no error.

        **C.**        **Finding of No Severe Mental Impairment Supported by Substantial Evidence**

In finding that none of Plaintiff's mental health impairments were severe, the ALJ explained that the medical records had been extensively supplemented since 2016 and that the record as a whole showed "minimal mental health treatment consisting only of medication management from his [Plaintiff's] primary care provider, and a short course of substance abuse treatment in 2017, in addition to mostly unremarkable mental status exams." (R. 1210-11.)

As we describe below, the ALJ noted that in the years after 2016 when the Agency doctors gave their opinions (as well as since the ALJ's first decision in 2018), Plaintiff's treatment for any mental health issues was minimal beyond medication, and the majority of his mental status examinations were normal. The ALJ discussed with particularity Plaintiff's ability to get along with other people and his ability to maintain concentration, persistence, and pace – the two issues flagged by the Appeals Council – and found that the entirety of the evidence did not support more than mild limitations with respect to either factor.

Specifically, the ALJ noted that Plaintiff's substance abuse treatment from April 2017 to March 2018 did not result in any work-related limitations, and that other records show only intermittent treatment for PTSD and anxiety, consisting solely of medication prescribed by his primary care physician. (*Id.*) The ALJ recounted that Plaintiff was stable on Xanax in July 2016, that he declined to be put on an SSRI (an anti-depressant) by a clinician in December 2016, that he was taking the anti-anxiety medication Diazepam in February 2018 and asked to switch from the SSRI Lexapro back to Xanax that May, and that in July he reported worsening anxiety and was belligerent on intake for a medical examination but later apologized for his behavior the same day.

(*Id.*) The ALJ also noted that at an August 2018 psychological consultative examination, Plaintiff performed poorly on some mental status tasks, particularly involving memory and was diagnosed with PTSD, but the examiner was "not convinced the claimant tried his best on these tasks." (R. 1200.) Plaintiff continued to take Xanax in 2018 and 2019 and while he reported worsening anxiety and depression, Plaintiff's psychological examinations were mostly normal, and he did not require inpatient or emergency treatment for mental health issues. (*Id.*) Further, the ALJ acknowledged the few times Plaintiff was verbally abusive to medical staff when denied pain medication and compared that to the many ER visits where Plaintiff's mental health was normal and noted that visits to his pain management and other doctors did not reveal difficulty with memory, communication, or participation in his care. (R. 2011.) As a whole, the ALJ's analysis reflects a careful weighing of the medical evidence, including that which supports Plaintiff's case and that which does not. We do not disturb the ALJ's determination.

The ALJ gave little weight to the psychological portion of the July and December 2016 opinions of the non-examining State Agency physicians, who opined that Plaintiff had severe mental impairments and that he was moderately limited in his ability to get along with other people and with respect to concentrating, persisting and maintaining pace, and was able to perform more than simple tasks but less than complex duties. (R. 90-121.)[5] The ALJ explained that, as described above, the medical evidence as a whole demonstrated little treatment for mental health issues, and particularly describes the evidence (or lack of it) that post-dates the 2016 Agency opinions. The ALJ also explained why she gave little weight to the July 2016 consultative psychological examination performed by Julia Young, Psy.D, that formed the basis of the Agency doctors' opinions. (R. 1212.) The ALJ noted that although Dr. Young opined that Plaintiff might have

---

[5] The ALJ gave some weight to the physical portion of the initial opinion that Plaintiff could work at the light level and little weight to the opinion on reconsideration that Plaintiff could work at the medium level.

7

PTSD, she did not provide any functional limitations that resulted from this diagnosis. (*Id.*) Dr. Young also reported that she had been unable to determine a true pathology because of the interference of Plaintiff's friend, who also attended the examination and interrupted or otherwise answered some of Dr. Young's questions on behalf of Plaintiff, and that she further believed that Plaintiff was not trying his best when performing mental tasks. (*Id.*)

Plaintiff argues that by rejecting the opinions of the Agency doctors, the ALJ impermissibly substituted her own lay opinion in finding Plaintiff did not have a severe mental impairment. He also argues that the ALJ further erred by discounting the opinion of consultative examiner Dr. Young, on whose examination the Agency doctors based their opinions. This is problematic, says Plaintiff, because the ALJ implicitly accepted Dr. Young's opinion in her 2018 decision when she found Plaintiff to have severe mental impairments. Therefore, Plaintiff contends, there can be no logical bridge from the evidence to the ALJ's current conclusion that Dr. Young's opinion is no longer reliable.

Because the previous opinion was vacated by agreed remand, any conclusions the ALJ made there are not before us. After reviewing the ALJ's 2020 decision and her reasoning, we are satisfied that she has supported her decision that Plaintiff does not have a severe mental health impairment with substantial evidence.

Moreover, the ALJ considered the Agency opinions, the consultative examination by Dr. Young, and the opinion of the behavioral analyst, and provided cogent reasons for rejecting the conclusions in all of them including, for example, that the opinions were not consistent with the rest of the medical record as it stood at the time of the second ALJ decision, that it was unclear how often the behavioral analyst saw or treated Plaintiff prior to rendering her opinion, and, in the case of Dr. Young, that her opinion itself was unreliable because of the interference of Plaintiff's

friend. *Pierce v. Colvin,* 739 F.3d 1046, 1051 (7th Cir. 2014) (holding that it is enough for an ALJ to summarize the findings of a non-treating source's opinion and note that those findings are not corroborated by the objective evidence in the record). The ALJ's discussion is more than adequate to "minimally articulate" the ALJ's reasons for rejecting the medical opinions about Plaintiff's mental health and constitutes substantial evidence to support the ALJ's finding that Plaintiff's mental impairments were not severe. *Grotts v. Kijakazi*, 27 F.3d 1273, 1277-78 (7th Cir. 2022) (ALJ must minimally articulate reasons for rejecting opinions of non-treating sources). Plaintiff's arguments to the contrary amount to no more than a request that we reweigh the evidence.

### D. ALJ's Physical RFC Not Supported by Substantial Evidence

Although we acknowledge the thorough and detailed explanation the ALJ gave in support of the RFC as it related to Plaintiff's impairments through September 2019, she failed to similarly support her findings that Plaintiff's deteriorating medical condition after that date did not warrant greater restrictions. Specifically, after wrongly discounting the opinion of Plaintiff's treating doctor, the ALJ came to her own, unsupported conclusion regarding the severity of Plaintiff's ankle arthritis and his worsening lumbar spine impairment.

Plaintiff developed problems with his ankles around October 2019, complaining about bilateral pain and swelling after walking. (R. 1505, 1507, 1531.) X-rays in November revealed arthritis but no fractures or lesions and examinations in October and November revealed no tenderness or swelling. (R. 1502, 1543.) But in February 2020, his primary doctor, John Furrey, M.D., noted "significant effusion" (fluid accumulation) of unknown origin and recorded that while the pain in Plaintiff's left ankle improved significantly after joint injections, his right ankle did not respond to treatment. (R. 1498, 1510.) Also in February, an MRI of Plaintiff's right ankle revealed tears in some of his tendons and ligaments as well as osteoarthritic and degenerative changes; Dr.

9

Furrey diagnosed arthritis. (R. 1489, 1497-98.) On examination on March 20, 2020, Plaintiff's right ankle showed moderate effusion and significant tendonitis and torn ligaments, and he had mild swelling in both lower extremities. (R. 1500.) Dr. Furrey prescribed the anti-inflammatory medication Celebrex and "in light of the severity and multitude of his pathologies," referred Plaintiff to an orthopedic surgeon for further evaluation; the medical record ends in March 2020 and there is no indication if Plaintiff saw the surgeon. (R. 1503.)

Also throughout 2019, Plaintiff complained about renewed pain in his lumbar spine. (R. 1499, 1522.) He previously had two surgeries on his back in 2017 as well as radiofrequency ablation of the facets in his back in 2018 and 2019, which provided temporary relief. (R. 1525, 1530-32, 1541.) An MRI in January 2019 revealed increased disc herniation in Plaintiff's spine since his previous MRI in 2017. (R. 1587.) At examinations in late 2019 and early 2020, Plaintiff had reduced range of motion and pain on extension and flexion of his back. (R. 1500, 1507.)

On May 18, 2020, Dr. Furrey, who had been treating Plaintiff bi-monthly for the previous 30 months, completed a medical opinion diagnosing Plaintiff with lumbar spondylosis and ankle arthritis and giving him a "guarded" prognosis. (R. 2096.) Dr. Furrey referenced Plaintiff's ankle arthritis and ligament tears and changes in his thoracic and lumbar spine as shown by MRI, and described Plaintiff's pain as daily, severe, and worse with activity. (*Id.*) He checked the box indicating that Plaintiff's impairments lasted or could be expected to last at least 12 months. (R. 2097.) Dr. Furrey also opined that Plaintiff was limited in his ability to ambulate or run long distances due to his ankle arthritis and stated that Plaintiff could walk "4-5" city blocks without rest or severe pain. (*Id.*) The opinion also stated that Plaintiff could sit for more than two hours, stand for up to 45 minutes before needing to sit or walk around, and stand/walk for a total of four hours in an eight-hour workday. (R. 2098.) Dr. Further also indicated that Plaintiff would need to

10

take unscheduled 15-minute breaks every four hours and that he could frequently carry up to 10 pounds and rarely carry 10t pounds or more. (R. 2099.)

The only medical opinion regarding the severity of Plaintiff's ankle arthritis and worsening lumbar spine impairment is from Dr. Furrey because the Agency doctors did not have evidence of Plaintiff's back surgeries, 2017 and 2019 spinal MRIs, radiofrequency ablation treatment, or his ankle injections or MRIs when they rendered their opinions in 2016. The ALJ gave Dr. Furrey's opinion some, but not controlling, weight because while Dr. Furrey cited to Plaintiff's MRIs as the clinical findings supporting his opinion, he did not cite to any examination findings. (R. 1212.) She also stated that Dr. Furrey's treatment notes did not support the restrictions he provided because Plaintiff consistently had 5/5 strength in all extremities, the ability to ambulate effectively, no impairment in his upper extremities, and generally normal sensory and reflex examinations and normal gait. (*Id.*) Additionally, while the ALJ acknowledged the tears in Plaintiff's right ankle tendons, she stated that there was no indication that the condition would not be remedied with treatments such as injections, therapy, or surgery within less than 12 months. (R. 1212.)

The ALJ's reasons for discounting Dr. Furrey's opinion are not supported by substantial evidence. Because Plaintiff filed his application for benefits prior to March 27, 2017, Dr. Furrey's opinion is entitled to controlling weight if it is well supported by clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence. 20 C.F.R. §1527(c)(2). Moreover, if an ALJ decides to give less than controlling weight of the opinion of a treating source, the ALJ must still consider a number of regulatory factors including the length of the treating relationship, the nature and extent of that relationship, the doctor's specialty, and how well the opinion is supported by the record as a whole. *Id.*

11

The first problem is that the ALJ discounted Dr. Furrey's opinion in part because there was no evidence Plaintiff's ankle arthritis would last at least 12 months. Not only does she offer no reason or evidence to support this contention, but the ALJ also ignored evidence that Plaintiff's ankle arthritis was actually getting worse. Plaintiff began complaining of ankle pain and swelling in October 2019 and although his first few examinations showed little tenderness or effusion, by early 2020 his right ankle had accumulated fluid buildup and an MRI revealed tendon tears and other evidence of arthritis. Although the ALJ states that there is no evidence that various treatments including injections would not resolve the impairment within 12 months, in fact, Plaintiff had already undergone injections which had no effect on the arthritis in his right ankle. Dr. Furrey referred Plaintiff to a surgeon because of the severity of the problem and wrote in his opinion that Plaintiff's impairments of his spine and ankles would last longer than 12 months. The ALJ's finding to the contrary is not supported by substantial evidence.

The ALJ's other reason for discounting Dr. Furrey's opinion – that it was inconsistent with his own treatment records and with other medical evidence – is also not supported by substantial evidence. For example, the fact that Plaintiff had no impairment in his upper extremities has no bearing on limitations related to his ankle arthritis or bulging discs in his back, and the fact that he was able to "ambulate effectively" is not inconsistent with Dr. Furrey's opinion that although Plaintiff was able to walk, he was limited in the amount of time he could do so, and that he needed to take regular breaks. *See Eula M. v. Kijakazi*, No. 20 CV 4284, 2023 WL 3347110, at *7 (N.D. Ill. May 10, 2023) (Claimant's ability to walk with a regular gait was not enough to show she was capable of perform the lifting and standing requirements of light work.) Moreover, the ALJ mistakenly wrote that Dr. Furrey opined that Plaintiff could lift up to 20 pounds occasionally; this was an error because Dr. Furrey actually opined that Plaintiff could lift up to 10 pounds frequently

12

and 10 pounds rarely. Because the ALJ did not explain which parts of Dr. Furrey's opinion deserved "some" weight, we cannot know if she relied on this mistake as part of her determination that Plaintiff could do light work, which further undermines the RFC.

The ALJ's failure to explain which parts of Dr. Furrey's opinion she gives "some weight" is also problematic because we are unable to determine how the medical evidence from 2019 and 2020 impacts her RFC; "the ALJ *must* seek an additional medical opinion if there is potentially decisive evidence that postdates the state agency consultant's opinion." *Kemplen v. Saul*, 844 Fed.Appx. 883, 888 (7th Cir. 2021). In other words, the issue "comes down to whether the new information 'changed the picture so much that the ALJ erred by ... evaluating [herself] the significance of [the subsequent] report.' " *Id.* (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)). The Commissioner explains away the fact that there is no updated agency opinion by pointing to Dr. Furrey's opinion and explaining that "the ALJ already had an expert opinion evaluating plaintiff's ankle and back impairments and reasonably assigned it some weight after evaluating whether it was supported by and consistent with the evidence." (Def. Resp. at 6). But this does not tell us enough; elsewhere in her brief, the Commissioner argues that the ALJ properly weighed the evidence and decided why she did not to give Dr. Furrey's opinion controlling weight. (*Id.* at 12). So how did the ALJ weigh Dr. Furrey's opinion? Which parts of it were entitled to "some weight" so as to make an independent medical opinion unneeded, which parts were not entitled to weight, and which could mean that there is no medical opinion interpreting Plaintiff's later medical test results? The ALJ's explanation is not clear on this point and thus we are not satisfied that substantial evidence supports the ALJ's determination that Plaintiff's ankle and back impairments were addressed in the RFC. *Tobias B. v. Kijakazi*, No. 20-cv-2959, 2022 WL 4356857, at *6 (N.D. Ill. Sept. 20, 2022) ("The Seventh Circuit has been especially critical of

13

ALJs' attempts to deduce the meaning of complex medical documents, such as MRI.") (citing cases).

## CONCLUSION

For these reasons, the Court grants Plaintiff's motion to remand the ALJ's decision (D.E. 20) and denies Defendant's the decision. (D.E. 26.)

ENTER:

_____
**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: July 20, 2023**